Murray v. Crooks.

——: liability of wrongful act of directors: conversion.

HARVEY MURRAY, Appellant, v. C. W. CROOKS, Respondent.

St. Louis Court of Appeals, February 21, 1899.

Contract: PERFORMANCE. In the case at bar the defendant had a right to assume, and did assume on the receipt of plaintiff's letter inclosing the draft and quitclaim deed, that plaintiff accepted his offer for the land; when he discovered that the deed prepared by plaintiff misdescribed the land, about which they had carried on the correspondence, he had the right to assume that the error was a mistake, and it was his duty to make and execute a deed correctly describing the land and to transmit it to plaintiff in performance of his part of the contract. Held, that the proceeds of the draft was the money of the defendant.

*Appeal from the Lawrence Circuit Court.*—HON. J. C. LAMSON, Judge.

AFFIRMED.

HENRY BRUMBACK and NORMAN GIBBS for respondent.

The plaintiff asked three declarations of law, all of which the court refused and which are printed in appellant's brief. On behalf of defendant the court gave the following declaration: "The court declares the law to be that the plaintiff in his first letter to defendant (read in evidence) identified the land in question by his references to the particular sale and deed by the sheriff of Lawrence county, and defendant's offer to release, made by his first letter to plaintiff (read in evidence), related to the same land, and plaintiff's acceptance of such offer, made in his second letter to defendant (read in evidence) constituted a contract, and such contract was met by defendant executing and sending to plaintiff a deed to said land." Respondent takes no issue with elementary principles of the law of contracts. He does contend that a contract was fairly entered into by the parties hereto, and fully complied with, and that he holds but his part of the fruits of that contract. Murray opened the negotiations. He had been previously fully advised of the situation by the personal service upon him by the sheriff of a summons of the court and of a petition of that court which contained the full description of the real estate, which it charged that he owned and was delinquent upon for taxes of 1893. He commences by referring to this suit and identifies the real estate; he asks no questions on that point, but asserts, "At the August term of court some land was sold under a tax judgment against myself and you became the purchaser." He was not in ignorance and did not pretend to be. * * * Even if Murray really was mistaken as to the land he intended, when writing his first letter, still it was his own mistake, not induced by any misrepresentations or fraud of Crooks, and it does not entitle him to any relief. Brown v. Fagan, 71 Mo. loc. cit. 568; Grymes v. Sanders, 93 U. S. 62.

MANN & TALBUTT for appellant.

The contract, relied upon in this case as a defense to plaintiff's action, was made entirely by correspondence, or it was never made. There can be no contention about this. A contract by correspondence can be made only by a proposition by one party and an acceptance by the other just as made—there is and can be no contention about this. When one party makes a proposition the other is not bound to accept it. Until the opinion in this case was handed down this proposition·was never disputed. The first proposition made in this case was that of defendant in his letter of September 8, 1896, in which he offers to deed the land, bought by him at sheriff's sale as the land of plaintiff for $20. This statement can not be disputed. Plaintiff had solicited that proposition by his first letter, but the fact that he had solicited the proposition did not compel him to accept it. He could reject it for any reason upon earth or for no reason whatever. Does this court dispute this proposition seriously? He could reject it either by writing a flat refusal, or by failing to answer at all, or by answering and failing to accept it just as made. Either of the three methods, if pursued, would be in law a rejection. If this proposition has ever been questioned by any court, we have failed to find a reported case. This statement of our reasons for asking for a rehearing in this cause is written hurriedly and with only four or five hours in which to get it into print and in the mail in time to reach the court before the time for its filing expires, and for that reason authorities are not cited, but we rely upon the fact that every principle invoked is elementary and will be readily conceded by the court.

BLAND, P. J.—At the August term, 1896, of the Lawrence circuit court the defendant purchased the following tract or parcels of land at execution sale on a judgment against

plaintiff for delinquent taxes, to wit lots 1 and 5 of northeast quarter, section 1, township 29, range 25, situated in Lawrence county.    After the sale the following correspondence was had through the mails between plaintiff and defendant:

1.    Letter of inquiry from plaintiff to defendant.

"Ash Grove, Mo., Sept. 2, 1896.   C. Crooks, Esq., Mt. Vernon, Missouri.   Dear Sir:—At the August term of court some land was sold under a tax judgment against myself and you became the purchaser.   Of course I do not recognize the sale as valid, but prefer compromise rather than a lawsuit. Please write me what you paid and what sum you will accept for a quitclaim deed. ·                     Yours truly,
                                        "Harvey Murray."

2.    Answer of defendant.

"Mt. Vernon, Mo., Sept. 8, 1896.   Harvey Murray, Esq., Ash Grove, Missouri.   Dear Sir:—I have been away from home and just received your letter of the 2nd this morning, and in reply will say that I bid the land in at $3.50, the deed cost me $2.50, and the recording of the deed cost me $1.75, making it cost me $7.75.   I will make a quitclaim deed for $20.   I would then only get about $10 dollars for my trouble as the cost of the quitclaim would about take up the remainder.   If you conclude to do this send it over and I will execute the deed and send it to you.      Respectfully,
                                        "C. W. Crooks."

3.    Reply of plaintiff.

"Ash Grove, Missouri, Sept. 12, 1896.   Dear Sir:—Enclosed find draft for $20 and Q. C. D. for execution.   If married, please have your wife join in deed.  Please send tax deed with this Q. C. D.                   Yours very truly,
                                        "Harvey Murray."

The quitclaim deed transmitted by this reply described a different tract of land from the one purchased by defendant at the sheriff's sale.   Defendant on receipt of this deed and the draft for $20, executed a quitclaim deed to plaintiff

conveying to him the tract which he had purchased at sheriff's sale, and transmitted it with his sheriff's deed by mail to plaintiff, accompanied by the following explanatory letter:

"Mt. Vernon, Mo., Oct. 16, 1896. Harvey Murray, Esq., Ash Grove, Mo. Sir:—Inclosed you will find sheriff's deed to me for the west half, lots 1 and 5 of the northeast quarter of section 1, township 29, range 25, and a Q. C. D. for the same from my wife and I. I wrote a new Q. C. D. for the reason that you had described the wrong land in the one you sent me and I made it to you because I did not know who you had sold it to.                C. W. Crooks."

To this plaintiff replied as follows:

"Ash Grove, Missouri, Oct. 20, 1896. C. W. Crooks, Esq., Mt. Vernon, Mo. Dear Sir:—Have been away and your letter of the 16th inst. was received and perused to-day. I return you herewith your sheriff's deed and also the one you wrote and sent me, as it is not the property I was buying. Please return my draft and oblige. Yours very truly,

"Harvey Murray."

Defendant returned the deeds to plaintiff, but kept the draft. Plaintiff afterwards met defendant and tendered these deeds and demanded the $20 he had paid. Defendant refused to receive the deeds or to pay back the $20. Plaintiff also sent the deeds to defendant by registered mail package. Defendant refused to take the package from the postoffice and it was returned to plaintiff. Plaintiff then brought this suit before a justice of the peace to recover the $20. He was defeated in the justice's court, and appealed to the circuit court, where he was again defeated; from the latter court he has duly appealed here.

Plaintiff testified that he had once owned the land described in the sheriff's deed to defendant and in defendant's quitclaim deed to him, but that he had sold and made a deed to it in 1893. He also testified in answer to a question pro-

pounded by defendant as to his ownership of the land, that he wanted defendant to convey to him, that in his judgment he had not conveyed it; that he had made a deed conveying some land, and that it might be described in that conveyance, but he did not know; and the grantee would not let him see it, and had not put it on record; that he did not think he had conveyed it, but he would not swear that he had not. He also testified that he had understood that this tract had been sold several years previous for taxes, but not at the August term, 1896, of the Lawrence circuit court, and that it was his information that the defendant did not buy it at the sale when it was sold. But the one execution sale of land as the land of plaintiff was made at the August term, 1896, of the Lawrence circuit court. The court in substance instructed that the evidence established a contract of sale and purchase of the land bought by defendant at the sheriff's sale, and to find for defendant. The evidence in the record establishes one of two things, either that the plaintiff was grossly negligent about his own affairs, or that after he had received the offer of defendant to sell him the land for $20, he undertook to shift or float the offer to another and different tract. He had the opportunity when on the witness stand to explain himself and to give a reason, if any he had, why he demanded a deed from Crooks for land which Crooks did not own and which he had not purchased at tax sale, but he failed to do this, and the presumption is that he had no explanation to make. We are unable to see any evidences of bad faith on the part of defendant as contended for by plaintiff, he had a right to assume, as he did assume,

ACCEPTANCE of offer.

on the receipt of plaintiff's letter inclosing the draft and quitclaim deed that plaintiff accepted his offer for the land, and when he discovered that the deed prepared by plaintiff misdescribed the land, about which they had carried on the correspondence, he had the right to assume that the error was a mistake, and

his duty was to make and execute a deed correctly describing the land and to transmit it to plaintiff in performance of his part of the contract; with this duty performed the matter was closed, the contract fully consummated, and the proceeds of the draft was the money of defendant. We think the evidence shows that the identity of the land was in the minds of both parties from the beginning, and that the contract was made when plaintiff accepted defendant's offer by letter and inclosed him the purchase price by draft. The judgment will be affirmed. All concur.